# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| STEVEN WHITTLEY, § | |
| § | |
| *Plaintiff*, § | |
| § | |
| § | |
| v. § | |
| § | |
| § | |
| JOSEPH KELLUM, et al. § | Civil Action No. 4:20-CV-00929 |
| § | Judge Mazzant |
| *Defendants*. § | |
| § | |

### MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants GEX Trans Group, Inc. and Prime Carrier, Inc.'s Motion for Summary Judgment (Dkt. #35). Having considered the relevant pleadings, the Court finds the motion should be **GRANTED**.

### BACKGROUND

On March 18, 2019, Plaintiff Steven Whittley ("Whittley") and Defendant Joseph Kellum ("Kellum") were involved in a motor vehicle collision (the "Collision"). The Collision occurred in Denton County, Texas. At the time of the Collision, Kellum was driving a tractor-trailer owned by Defendant GEX Trans Group, Inc. ("GEX"). However, GEX had previously leased the tractor-trailer to Defendant GAT Global Solutions, Inc. ("GAT"). Kellum was operating the tractor-trailer at the direction of GAT. Kellum possessed a valid West Virginia commercial driver's license at the time of the Collision.

Whittley filed suit on December 3, 2020, for personal injuries arising out of the Collision (Dkt. #1). Whittley asserts a claim for negligence against Kellum. Whittley also asserts claims for negligence, negligent entrustment, and respondeat superior against GEX, GAT, and Defendant Prime Carrier, Inc. ("Prime Carrier").

On January 12, 2022, GEX and Prime Carrier moved for summary judgment (Dkt. #35). Whittley has not responded.

## LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits "[show] that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The trial court must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment. *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981) (citations omitted). The substantive law identifies which facts are material. *Anderson*, 477 U.S. at 248.

The party moving for summary judgment has the burden to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id.* at 247. If the movant bears the burden of proof on a claim or defense on which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Where the nonmovant bears the burden of proof, the movant may discharge its burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing

*Anderson*, 477 U.S. at 248–49). The nonmovant must adduce affirmative evidence. *Anderson*, 477 U.S. at 257. No "mere denial of material facts nor . . . unsworn allegations [nor] arguments and assertions in briefs or legal memoranda" will suffice to carry this burden. *Moayedi v. Compaq Computer Corp.*, 98 F. App'x 335, 338 (5th Cir. 2004). Rather, the Court requires "significant probative evidence" from the nonmovant in order to dismiss a request for summary judgment supported appropriately by the movant. *United States v. Lawrence*, 276 F.3d 193, 197 (5th Cir. 2001). The Court must consider all of the evidence but must refrain from making any credibility determinations or weighing the evidence. *See Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

## ANALYSIS

Whittley has asserted claims for negligent entrustment, respondeat superior, and negligence against GEX and Prime Carrier. GEX and Prime Carrier argue Whittley has insufficient, or no, evidence to support his claims against them. Because Whittley has not responded, assuming GEX and Prime Carrier show there is an absence of evidence to support Whittley's case against them, then the motion necessarily succeeds.[1] The Court will begin with the negligent entrustment claim.

### A. Negligent Entrustment

"To make out a negligent-entrustment claim, a plaintiff generally must show each of the following: (1) entrustment of a vehicle by the owner; (2) to an unlicensed, incompetent, or reckless driver; (3) that the owner knew or should have known to be unlicensed, incompetent, or reckless; (4) the driver was negligent on the occasion in question; and (5) the driver's negligence proximately caused the accident." *Wright v. Weaver*, 516 F. App'x 306, 309 (5th Cir. 2013). GEX

---

[1] A party's failure to file a response "creates a presumption that the party does not controvert facts set out by movant and has no evidence to offer in opposition to the motion." E.D. Tex. Civ. R. 7(d).

3

argues there is no evidence it entrusted the tractor-trailer to Kellum because GEX merely leased the vehicle to GAT, and the tractor-trailer came into Kellum's possession through GAT. The Court agrees.

Mere ownership of a vehicle is not conclusive to demonstrate entrustment. *Cf. Morris v. JTM Materials, Inc.*, 78 S.W.3d 28, 52 (Tex. App.—Fort Worth 2002, no writ) (holding the employer of the negligent driver, who did not own the vehicle being operated at the time of the collision, could be held liable for negligent entrustment because it had the right to control the vehicle). "In fact, lessees of vehicles generally assume complete responsibility for the operation of the leased vehicles for the duration of the lease." *McDorman v. Texas-Cola Leasing Co. LP, LLLP*, 288 F. Supp. 2d 796, 802 (N.D. Tex. 2003) (citations omitted). Whittley has not presented any evidence that GEX maintained control over the tractor-trailer involved in the Collision. The lease was signed in 2017, and GEX maintains it did not exercise any control over the location, or driver, of the tractor-trailer on the date of the Collision (Dkt. #25, Exhibit 2 ¶¶ 8–9). Whittley has failed to show a genuine issue of material fact that would give rise to liability on GEX's part for negligent entrustment, and summary judgment is therefore proper.

As for Prime Carrier, Whittley must establish entrustment of the tractor-trailer by the owner. *Wright*, 516 F. App'x at 309. If Prime Carrier neither owned nor controlled the vehicle, there can be no liability for negligent entrustment. *Atl. Indus. v. Blair*, 457 S.W.3d 511, 518–19 (Tex. App.—El Paso 2014), *rev'd on other grounds*, 482 S.W.3d 57 (2016) (per curiam). GEX is the undisputed owner of the tractor-trailer. Prime Carrier never owned or leased the tractor-trailer (Dkt. #35, Exhibit 4 ¶¶ 7–9). Kellum was not in Prime Carrier's employment at the time of the Collision (Dkt. #35, Exhibit 4 ¶¶ 5–6). Kellum has admitted he was an independent contractor of GAT, was in route to make a delivery for GAT at the time of the Collision, and GAT gave Kellum

directions on the details of deliveries Kellum was required to make (Dkt. #35, Exhibit 3 ¶¶ 2–3). There is simply no evidence Prime Carrier had any control over the tractor-trailer Kellum drove at the time of the Collision. Without evidence of ownership or control, Prime Carrier may not be held liable for negligent entrustment. *Blair*, 457 S.W.3d at 518–19. Summary judgment is therefore proper as to Prime Carrier as well.

### B. Respondeat Superior

GEX and Prime Carrier argue there is no evidence to support a claim of Respondeat Superior against it because Kellum was an independent contractor of GAT.

Under the doctrine of respondeat superior, an employer is vicariously liable for the torts of a driver employee committed in the course of employment. *Newspapers, Inc v. Love*, 380 S.W.2d 582, 588–589 (Tex. 1964). Proving an employer's vicarious liability for a worker's negligent driving or other conduct involves a two-step process. *Painter v. Amerimex Drilling I, Ltd.*, 561 S.W.3d 125, 131 (Tex. 2018). The plaintiff must show that at the time of the negligent conduct, the worker: (1) was an employee; and (2) was acting in the course and scope of employment. *Limestone Prods. Distrib., Inc. v. McNamara*, 71 S.W.3d 308, 311 (Tex. 2002). The first step depends on whether the employer has the overall right to control the progress, details, and methods of operations of the work, whether or not it chooses to exercise that right as to any particular task. *Painter*, 561 S.W.3d at 131.

In determining the existence of an employer-employee relationship for purposes of imposing vicarious liability on the employer for the physical conduct of the employee that causes physical harm to the person or property of a third party, the crucial test is the existence of the contractual right to control the details of the manner and method by which the employee conducts the employer's business. *Newspapers*, 380 S.W.2d at 588–89 (Tex. 1964); *see also Perryman v.*

*Self*, 546 S.W.2d 670, 671 (Tex. App.—Waco 1977, no writ). In an employer-employee relationship, the employer normally will control when and where to begin work, the regularity of hours and the amount of time spent on particular aspects of work, the physical method or manner of accomplishing an end result, and the type of tools and appliances used to perform the work. *Dougherty v. Gifford*, 826 S.W.2d 668, 678 (Tex. App.—Texarkana 1992, no writ). In his affidavit, Kellum states he had no communication with GEX regarding any of his deliveries (Dkt. #35, Exhibit 3 ¶ 6). Without evidence that GEX had any control whatsoever over Kellum, there is no support establishing that Kellum was an employee of GEX. Therefore, GEX may not be held vicariously liable for Kellum's conduct under a theory of respondeat superior.

As for Prime Carrier, Kellum states in his affidavit that he worked for Prime Carrier through December 2018 (Dkt. #35, Exhibit 3 ¶ 7). However, Kellum began an employment relationship[2] with GAT on January 15, 2019 (Dkt. 35, Exhibit 3 ¶ 8). The Collision occurred on March 18, 2019, months after Kellum's work relationship with Kellum ended, and the relationship with GAT began. There is no evidence Prime Carrier exercised any control over Kellum's deliveries or other job duties as of the date of the Collision. Accordingly, summary judgment is proper.

### C. Negligence

The final claim Whittley asserts against GEX and Prime Carrier is for negligence. Whittley alleged GEX and Prime Carrier failed to properly train and/or supervise Kellum. GEX and Prime Carrier argue neither had a duty to train or supervise Kellum since Kellum was not affiliated with GEX or Prime Carrier in any capacity at the time of the Collision. Both sides appear to argue

---

[2] Kellum states in his affidavit that he began work as an "independent contractor" for GAT (Dkt. #35, Exhibit 3). However, the Court does not find Kellum qualified to make that determination, and the Court does not take up at this time whether Kellum was an employee or an independent contractor of GAT.

6

under a theory of negligent training and supervision, which are recognized causes of action in Texas, but have not been asserted here. Thus, the Court proceeds with its analysis of the asserted negligence claim.

To prevail on his negligence cause of action, Whittley must establish the existence of a legal duty, a breach of that duty, and damages proximately caused by the breach. *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004). In general, one person has no liability for the acts of another because a person ordinarily has no duty to control the conduct of another, even if the ability to control that person exists. *Otis Eng'g Corp. v. Clark*, 668 S.W.2d 307, 309 (Tex. 1983); *see also* Restatement (Second) of Torts, § 315(a) (no duty to control conduct of third person unless special relationship exists between actor and third person that imposes duty to control).

The ordinary duty of care has been defined as "a duty to act as a reasonably prudent person under the same or similar circumstances, considering the reasonably foreseeable risk or probability of injury to persons situated as the plaintiff." *Nw. Mall, Inc. v. Lubri-Lon Intern.*, 681 S.W.2d 797, 802 (Tex. App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.). Texas courts have emphasized that a number of factors must be considered in determining whether a duty exists, but it is generally agreed that the most important of these factors is foreseeability. *El Chico Corp. v. Poole*, 732 S.W.2d 306, 311 (Tex. 1987). The precise nature of the harm actually incurred need not be foreseeable, only its general nature. *Berry Prop. Mgmt. v. Bliskey*, 850 S.W.2d 644, 654 (Tex. App.—Corpus Christi 1993, writ dism'd agr.). Foreseeability is judged under a two-part test: (1) whether the injury is of such a general character as might reasonably have been anticipated; and (2) whether the injured party is so situated with relation to the wrongful act that

injury to the party or one similarly situated might reasonably have been foreseen. *Mellon Mortg. Co. v. Holder*, 5 S.W.3d 654, 655 (Tex. 1999).

Prime Carrier was in no position to foresee the Collision. It did not own, lease, or operate the tractor-trailer. It no longer utilized Kellum's delivery services. It has no relationship with GAT or GEX. Imposing a duty on Prime Carrier would be unreasonable give the circumstances of this case. Whittley cannot establish Prime Carrier owed a duty to train or supervise Kellum, and therefore he cannot succeed on a negligence claim against Prime Carrier. Summary judgment is thus appropriate.

For GEX, it is at least foreseeable that someone from GAT would use and operate the tractor-trailer, and that the tractor-trailer could be involved in an automobile collision. That said, other factors considered in determining whether a duty exists include the degree of risk of injury to the plaintiff, the probability of injury balanced against the social utility of the actor's conduct, the magnitude of the burden that would be imposed if a duty to guard against or avoid the activity is imposed, and the consequences of placing that burden on the defendant. *Bird v. W.C.W.*, 868 S.W.2d 767, 769 (Tex. 1994). It would be unreasonable for this Court to expect the owner-lessor of a vehicle to train and supervise its lessee's employees. Such a burden would be likely impossible—or at least onerous—to meet as any training or supervision falls within GAT's purview. This consideration, taken together with the general rule precluding liability for the conduct of another, leads the Court to find GEX did not owe a duty to Whittley to train or supervise Kellum. Thus, summary judgment is also appropriate for Whittley's negligence claim against GEX.

## CONCLUSION

It is therefore **ORDERED** that Defendants' Motion for Summary Judgment (Dkt. #35) is hereby **GRANTED**.

It is further **ORDERED** that all claims against GEX Trans Group, Inc. and Prime Carrier, Inc. are dismissed with prejudice.

**IT IS SO ORDERED**.
SIGNED this 10th day of March, 2022.

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE